UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
MARILYN PHILLIPS,                                                    :
                                                                    :
                                        Plaintiff,                  :
                                                                    :
                v.                                                  :        3:25-CV-01423 (SFR)
                                                                    :
STATE OF CONNECTICUT DEPARTMENT OF                                  :
SOCIAL SERVICES,                                                    :
                                                                    :
                                        Defendant.     x
------------------------------------------------------------------

## MEMORANDUM & ORDER

Plaintiff Marilyn Phillips ("Phillips") has filed an Amended Complaint ("Am. Compl.")

against Defendant State of Connecticut Department of Social Services ("DSS") asserting

claims for failure to promote, disparate treatment, and a hostile work environment in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. DSS has filed a Motion to

Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For

the reasons stated below, I grant in part and deny in part the Motion to Dismiss the Amended

Complaint.

## I.      BACKGROUND

### A.      Factual Background

I accept the following allegations in the Amended Complaint as true for purposes of

consideration of the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Phillips is a Black, African American woman, who has worked for DSS since January 4, 2010,

as an Eligibility Service Worker ("ESW") in the Long Term Services and Support ("LTSS")

unit. Am. Compl. ¶¶ 3-5. The Amended Complaint alleges that since 2022, "Defendant has

1

been promoting non-protected basis employees who are systematically given higher positions over Plaintiff's protected basis with similar experience." *Id.* ¶ 5.

Phillips has received "[e]xcellent," performance appraisals from her supervisors, Jill Sciuto ("Sciuto"), Karen Melillo ("Melillo) and Manager Tim Latifi ("Latifi"). The Amended Complaint identifies all three supervisors as "Caucasian, White." *Id.* Phillips' performance has met, if not exceeded DSS' work expectations. *Id.* ¶ 4. Despite these qualifications, Phillips' supervisors and manager preselected in 2022 who they were going to promote to two coveted ESS positions in the LTSS unit. *Id.* ¶ 5. The supervisors and manager disproportionately selected non-protected basis individuals. *Id.*

In May 2021, Phillips learned of two openings for eligibility specialists from a coworker, Megan Finlayson. *Id.* ¶ 6. The Amended Complaint identifies Finlayson as "Caucasian, White, . . . [f]emale." *Id.* Although the job openings had not been publicly posted, Finlayson informed the Plaintiff, "[t]he supervisors and management had talked it over and they already decided who they want for the two positions." *Id.* Finlayson indicated she would be getting one of the positions. *Id.* After that conversation, the jobs were posted and interviews were held. *Id.* Finlayson and a younger African American female employee were selected for the positions as both were preselected. *Id.* When Phillips applied and interviewed for the position on August 4, 2021, Latifi said "a lot of people are applying, and we can't hire everyone for the position . . . many people applied for the positions and are capable but would not be selected." *Id.* The Amended Complaint asserts: "Subsequently, Phillips did not get the position." *Id.* Finlayson, who had been working for DSS in the LTSS unit for only four years, received the position. *Id.*

2

In 2010, when Phillips was hired, the supervisor and three ESS workers were each Caucasian. *Id.* ¶ 7. There were two African American/Black women ESWs and one Caucasian/White ESW. *Id.* The unit is now predominately African American women (fourteen of the twenty-two workers). *Id.* However, 67% of the supervisors are Caucasian/White. *Id.* Often, protected-basis employees such as Phillips are given fewer assignments that offer "development opportunities" that could lead to future promotions. *Id.*

During the Covid-19 pandemic, DSS made a new policy for employees to bring files home from work. *Id.* ¶ 8. During this time, the Plaintiff effectively completed applications as a part of her work duties and worked in the office two days a week. *Id.* One time, Phillips' daughter, Gabrielle Phillips ("Gabrielle"), who works in the same unit as Phillips, asked if Phillips could transport a file home for Gabrielle to review. *Id.* Phillips took a picture with her cell phone of the single page transmittal sheet for the file. *Id.* Phillips had never done this before, and during the weekend, the photo and the CPAP application from the file were accidentally posted on Phillips' Facebook page. *Id.* Once Phillips was made aware of the posting, she immediately took it down and informed her supervisor who reported it to management. *Id.*

On January 10, 2022, a meeting about the incident was held and it was categorized as a breach of paperwork. *Id.* Phillips received a confidential verbal counseling, which the Amended Complaint alleges was more severe than disciplinary considerations for non-protected basis employees. *Id.*

On January 26, 2022, Phillips requested to change her in-office workdays in accordance with DSS' Covid-19 policy. *Id.* ¶ 9. She made this request to commute to work with her daughter as she does not drive. The request was initially approved by Latifi who instructed her

3

not to talk to her daughter about any of her cases and said Phillips' daughter was not permitted to carry any of Phillips' files. Phillips was told if she could not carry any of her own files, she would be assigned to work in the office full-time. *Id.*

At approximately this time, a coworker in Phillips' unit, Debby Hirth (who the Amended Complaint describes as "Caucasian, White, Female") had been out of the office for over a year, and her files were being carried to her vehicle by supervisors, leads, and coworkers. *Id.* Hirth was being treated more favorably than Phillips, who had similar requests denied and deemed "unreasonable." *Id.*

In March 2022, a phone call was held between Phillips, her supervisors, and another employee named Kailie Gulino (described in the Amended Complaint as "Caucasian, White, Female"). *Id.* ¶ 10. According to the Amended Complaint: "During the phone call, Sciuto discussed the incident of the breach of paperwork in January 2022. At the time [Phillips] was told the only consequence for that incident was verbal counseling; however, it was highlighted during the phone call to suggest [Phillips] was not allowed to have her daughter assist her in bringing files home because of the incident." *Id.*

Gulino said she had concerns with Phillips transferring files to and from home and scanning documents. *Id.* During the phone call, Phillips was told her accommodation request was denied. *Id.* Phillips was told to use personal or vacation time as a substitute for an accommodation. Phillips subsequently appealed this decision and, after three months, she was approved to go into the office one day a week. *Id.* Phillips "received a significant amount of pushback from Management" after the approval. *Id.* Phillips' supervisors did allow Gabrielle to transport Phillips' files, but put in place restrictions including that Phillips and Gabrielle had to go straight home without stopping at the gas station or grocery store. *Id.* Gabrielle could

4

have offered a good accommodation support, but instead, she and Phillips were ordered not to help one another. *Id.* According to the Amended Complaint, "[s]uch restriction based on comparable treatment of non-protected basis employees, was based on Plaintiff's protected basis." *Id.*

### B.    Procedural History

Phillips filed her initial Complaint in Connecticut Superior Court. ECF No. 1-1, at 1. On September 3, 2025, DSS timely removed this case to federal court. ECF No. 1. On October 10, 2025, DSS filed a Motion to Dismiss the initial Complaint. ECF No. 17. On October 31, 2025, Phillips filed an Amended Complaint. Am. Compl., ECF No. 21. Thereafter, I denied DSS's earlier Motion to Dismiss the Complaint as moot. ECF No. 22.

On November 25, 2025, DSS filed a Motion to Dismiss the Amended Complaint and accompanying Memorandum. Def.'s Mot. to Dismiss Am. Compl., ECF No. 23; Mem. in Supp. of Mot. to Dismiss the Pl.'s Am. Compl. ("Def.'s Mem."), ECF No. 23-1. On November 25, 2025, DSS also filed a Motion to Stay Discovery. ECF No. 24. On December 1, 2025, I temporarily stayed discovery, ECF No. 25, and on January 22, 2026, granted DSS' Motion to Stay Discovery pending my ruling on the Motion to Dismiss the Amended Complaint, ECF No. 30.

On February 11, 2026, Phillips filed her Memorandum in Opposition to DSS' Motion to Dismiss the Amended Complaint. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss Am. Compl. ("Pl.'s Mem."), ECF No. 32. On February 25, 2026, DSS filed its Reply. Def.'s Rep., ECF No. 34.

## II.     LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a 'probability requirement,'" it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.     DISCUSSION

### A.     Failure to Promote Claim

Phillips' Amended Complaint alleges that her supervisors discriminated against her by failing to promote her and instead preselecting two other female employees: one who is White and one who is African American. Am. Compl. ¶¶ 5, 6. DSS argues that Phillips' failure to promote claim should be dismissed because it is untimely and fails to state a claim. Def.'s Mem. 4-7. Phillips argues that DSS has continually been promoting non-protected basis employees within the statutorily required time period, and that the date Phillips was interviewed for the promotion is not the date she was denied promotion. Pl.'s Mem. 8-9. In addition, Phillips argues her allegations support an inference of discrimination. *Id.* at 17.

6

### 1.    Timeliness of Claim

It is well-established that Title VII requires a plaintiff to exhaust her administrative remedies before filing suit in federal court. *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). A work-sharing relationship between the Equal Employment Opportunity Commission ("EEOC") and a state discrimination agency such as the Connecticut Commission on Human Rights and Opportunities ("CHRO") enables the complaint to be cross-listed with the EEOC at the time the CHRO receives it. *See Ortiz v. Prudential Ins.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000). In states with their own anti-discrimination laws and agencies, like Connecticut, the time period to file the complaint with the EEOC extends from 180 days to 300 days where there is proof that the complaint was first submitted to the state agency. 42 U.S.C. § 2000e-5(e)(1). Further, the ADA explicitly incorporates the time limits established by Title VII. *See* 42 U.S.C. § 12117(a).

Phillips' failure to promote claim is a discrete act that is complete when she was denied the promotion. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[1]

---

[1] "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004). However, the continuing violation doctrine does not apply to "discrete discriminatory acts," which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. A discrete discriminatory act is a "single completed action" that occurs at a specific time, and typically is actionable on its own. *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003). The Supreme Court has identified "termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete acts,

A statute of limitations defense "is an affirmative defense, and therefore generally not appropriate for a motion to dismiss." *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity*, No. 11-cv-282 (JCH), 2012 WL 162361, at *3 (D. Conn. Jan. 19, 2012). "[A] defendant may only raise such a defense in a pre-answer motion to dismiss where the dates in a complaint clearly show that an action is barred by a statute of limitations." *Theophilous v. Bridgeport Mental Health Ctr.*, No. 18-CV-02151 (VAB), 2020 WL 4449949, at *8 (D. Conn. Aug. 2, 2020) (internal quotation marks omitted); *see Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

If the failure to promote Phillips occurred before December 4, 2021,[2] then the claim would be time-barred. DSS observes that the Amended Complaint alleges Phillips was interviewed on August 4, 2021. Def.'s Mem. 5. However, Phillips responds that although the Amended Complaint does not specify the precise date Philips was denied the promotion, it does indicate the failure to promote was in 2022. Pl.'s Mem. 9.

The Amended Complaint alleges that Phillips became aware of two ESS position openings in May 2021. Am. Compl. ¶ 6. Further: "On August 4, 2021, the Plaintiff interviewed

---

each of which "starts a new clock for filing charges." *Morgan*, 536 U.S. at 113-14. "[C]ourts in this circuit disfavor application of the continuing violations doctrine and hold that only compelling circumstances warrant use of this exception to the statute of limitations." *Ravenscroft v. Williams Scotsman, Inc.*, No. 3:14-CV-870 (MPS), 2015 WL 1311332, at *3 (D. Conn. Mar. 23, 2015) (quoting *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 189-90 (D. Conn. 2000) (collecting cases)).

[2] The parties do not dispute that Phillips filed her complaint with the CHRO and the EEOC on September 30, 2022. *See* ECF No. 23-1, at 4; Pl.'s Mem. 9.

for the position her with her supervisor . . . . During the interview, [her manager] said to the Plaintiff, 'a lot of people are applying, and we can't hire everyone for the position . . . many people applied for the positions and are capable but would not be selected.' Subsequently, the Plaintiff did not get the position." *Id*. In addition, the Amended Complaint states that Melillo and Latifi "preselected in 2022 who they were going to promote to the two coveted ESS positions in the LTSS UNIT." *Id*. ¶ 5. Thus, drawing all inferences in Phillips' favor, a fair reading of the Amended Complaint is that Phillips interviewed for an ESS position in August 2021 and was denied a promotion when the positions were filled in 2022 by individuals who were preselected.

In short, it is unclear from the face of the Amended Complaint when exactly DSS failed to promote Phillips and whether this determination occurred before or after December 4, 2021. In ruling on a motion to dismiss, I am required to "draw[] all reasonable inferences in favor of the plaintiff." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (citing *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022)). Given the uncertainty about the date of the decision to deny Phillips a promotion, I am unable to conclude at this stage of the litigation that this claim is time-barred.

### 2.    Stating a Claim

DSS argues that Phillips fails to state a claim for failure to promote in violation of Title VII because she has not alleged facts that support an inference of discriminatory motivation in the failure to promote Phillips. Def.'s Mem. 6. More specifically, DSS argues that Phillips cannot show discriminatory intent regarding the failure to promote her because one of the two people promoted was also an African American woman, the same protected class as Phillips. *Id.* at 7. Phillips responds that the preselection of a non-protected basis employee over Phillips

suffices to state a Title VII claim, particularly when combined with the other facts she alleges. Pl.'s Mem. 11-12.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or other grounds]." 42 U.S.C. § 2000e-2(a)(1). At the pleadings stage, Title VII requires a plaintiff asserting a discrimination claim to allege he "[1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The facts necessary to survive a motion to dismiss should align with the "reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id.* Therefore, "the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, the complaint only needs to support "a minimal inference of discriminatory motivation." *Id.*

DSS does not challenge Phillips' qualifications, membership of a protected class, or that the failure to promote her constituted an adverse employment action. Therefore, the question of whether Phillips can state a claim for the failure to promote her depends on whether there was "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 311.

DSS cites *Adeniji v. Administration for Children Services*, 43 F. Supp. 2d 407, 426 n.7 (S.D.N.Y. 1999), for the proposition that there can be no discriminatory intent where a plaintiff cites comparators in her same protected class. Def.'s Mem. 7. In *Adeniji*, however, *every single* comparator shared the plaintiff's protected class. *Adeniji*, 43 F. Supp. 2d at 426 n.7. Moreover,

10

*Adeniji*, and the cases it relies upon, granted motions for summary judgment, not motions to dismiss. At the motion to dismiss stage, a plaintiff need only state a plausible claim. *See Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015) ("A plaintiff alleging employment discrimination thus may withstand a motion to dismiss without pleading each element of a *prima facie* case."); *EEOC v. Port Auth.*, 768 F.3d 247, 254 (2d Cir. 2014) ("[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims . . . across the line from conceivable to plausible to proceed.") (citation modified).

The Amended Complaint alleges that Phillips had worked in the LTSS Unit since 2010 and received "excellent performance appraisals." Am. Compl. ¶¶ 4, 6. Nonetheless, DSS promoted Finlayson, "who had only been working in the LTSS Unit for Defendant for four years." *Id*. ¶ 6. In addition to Finlayson, described as Caucasian by the Amended Complaint, "a younger African American/Female employee" also got selected for the promotion over Phillips. *Id.* The Amended Complaint also alleges that the LTSS unit's management is disproportionately "Caucasian/White" (67%) relative to the unit as a whole 36.36% (8/22). *Id.* ¶ 7. Although the promotion of an African American alongside Finlayson may reduce the likelihood that discriminatory intent motivated the failure to promote Phillips, it does not completely rule out such intent. The alleged facts provide at least minimal support for an inference of discriminatory intent and suffice at this stage of the case.

Accordingly, Phillips has stated a claim for failure to promote. *See Lebron v. Dep't of Soc. Servs.*, No. 22-CV-155 (VAB), 2023 WL 184245, at *4 (D. Conn. Jan. 13, 2023) ("[Plaintiff] alleges that he was not promoted, even though he had all the necessary

11

requirements, including 'IE education and work experience.' Additionally, [plaintiff] alleges that a 'White female' was promoted even though she did not meet the job requirements. Given the 'exceedingly low burden' required of plaintiffs at the pleading stage, [plaintiff]'s allegations are sufficient to state a Title VII claim.") (citing *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) (other citations omitted).

### B.    Disparate Treatment

The Amended Complaint also asserts that Phillips was subject to disparate treatment in violation of Title VII because she received more severe disciplinary actions than non-protected basis employees and was not given accommodations that were provided to non-protected basis employees. Am. Compl. ¶¶ 9-11. DSS argues the Amended Complaint fails to state a claim for disparate treatment because Phillips did not suffer an adverse employment action and the facts alleged do not support an inference of discriminatory intent. Def.'s Mem. 10.

As noted, at the pleadings stage, Title VII requires a plaintiff asserting a discrimination claim to allege she "[1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Since DSS does not dispute that Phillips was a qualified member of a protected class, I examine only the third and fourth pleading requirements to state a claim for employment discrimination based on the disciplinary actions and accommodation requests.

"An adverse employment action is 'a materially adverse change in the terms and conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). The Second Circuit has instructed that:

12

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755); *see also Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (holding similarly). "Moreover, while there is no exhaustive list of what constitutes an adverse employment action, courts have also held that denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions" under certain circumstances. *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).

"[A]dverse employment actions . . . must be more than trivial, insubstantial, or petty." *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 288 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also id.* (concluding that supervisor's "taking [the plaintiff's] bathroom keys, . . . insistence that she get a mannequin on one occasion, and . . . 'talking down' to [the plaintiff]" did not constitute adverse employment actions (alteration omitted)); *Abalola v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 20-CV-6199 (GHW), 2022 WL 973861, at *7 (S.D.N.Y. Mar. 30, 2022) ("[The plaintiff's] claims that [two individuals] harassed and demeaned her do not constitute adverse employment actions."); *LeeHim v. N.Y.C. Dep't of Educ.*, No. 17-CV-3838 (PAE), 2017 WL 5634128, at *4 (S.D.N.Y. Nov. 21, 2017) (explaining that "'petty slights,' such as shushing" and "rude and intemperate conduct" do not

13

amount to adverse employment actions). Adverse employment actions must rise above the level of a "mere inconvenience or an alteration of job responsibilities." *See Littlejohn*, 795 F.3d at 312 n.10 (2d Cir. 2015).

After being accused of breaching a work policy about bringing files home, Phillips alleges she "was given a confidential verbal counseling, which action was more severe than disciplinary considerations for non-protected basis employees." Am. Compl. ¶ 8. "But criticism, verbal reprimands, and notices of potential discipline, by themselves, do not qualify as adverse employment actions." *Stewart v. City of New York*, No. 22-2775, 2023 WL 6970127, at *2 (2d Cir. Oct. 23, 2023); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019) (concluding that there was no adverse employment action where employee received four verbal reprimands). Thus, Phillips fails to state a claim for disparate treatment under Title VII based on the verbal counseling alone.

In addition, I conclude that Phillips has not alleged an adverse employment action in relation to her request to work remotely. The Amended Complaint alleges that on January 26, 2022, "Plaintiff made a request to change her in-office workdays assigned to her." Am. Compl. ¶ 9. According to the Amended Complaint, Latifi approved Phillips' request but told Phillips that she could not talk to her daughter about any of her cases or permit her daughter to carry any of her files. *Id.* Phillips was "told if she cannot carry any of her own files, she would be assigned to work in the office full-time." *Id.* However: "The Plaintiff subsequently appealed this decision and after three (3) months, she was approved to go into the office one day a week . . . . While the Plaintiff's daughter was allowed to transport files, Management gave several restrictions such as Gabrielle [the daughter] and the Plaintiff would have to go straight home, no stopping at the gas station or grocery store." *Id.* ¶ 10. Thus, the claim amounts to an

14

allegation that Phillips' supervisor denied her request for her daughter carry her files for her, and after three months, granted this request with the requirement that they go straight home from work.

As an initial matter, Phillips has not shown that she suffered a "materially adverse" "change in working conditions" based on this remote work request. *Mathirampuzha*, 548 F.3d at 78; *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024) (stating that the adverse employment action "must have left [the plaintiff] worse off, but need not have left [the plaintiff] significantly so"). Phillips did not end up worse off after the allegedly adverse action than before because by not allowing Phillip's daughter to carry her files, her supervisors merely maintained Phillips' employment status quo ex ante of the request.

Nevertheless, courts have held that "denial of a requested employment accommodation" can constitute an adverse employment action "under certain circumstances." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 450 (S.D.N.Y. 2023) (citing *Potash*, 972 F. Supp. 2d at 584). However, an "adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Westbrook v. City of New York*, No. 23-CV-3164 (VSB), 2026 WL 802613, at *4 (S.D.N.Y. Mar. 23, 2026) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). After three months, Phillips' supervisors allowed her to work from home all but one day a week, allowed her to bring her files home, and allowed Gabrielle to carry Phillips' files. Am. Compl. ¶ 10. The delay in these accommodations does not rise to the level of an adverse employment action. Accordingly, the Amended Complaint does not state a claim for disparate treatment under Title VII based on the verbal counseling and remote work request.

15

### C.    Hostile Work Environment Claim

The Amended Complaint also asserts that DSS "has continued a course of harassment against [Phillips]." *Id.* ¶¶ 12, 14. DSS argues that the Amended Complaint does not allege sufficient facts to support a hostile work environment claim. Def.'s Mem. 12-15. Phillips argues that the intentional preselection of non-protected basis employees for promotion, more severe discipline of Phillips compared to non-protected basis employees, and preferential treatment of non-protected basis employees sufficiently alleges "a work atmosphere permeated by hostile intent" and demonstrates a "pattern of behavior [that] was indicative of discriminatory animus." Pl.'s Mem. 17. I agree with DSS that Phillips has failed to plead sufficient facts to support a hostile work environment claim.

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex [or other protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). "Proving the existence of a hostile work environment involves showing both 'objective and subjective elements . . . .'" *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). Title VII "is not a civility code." *Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 592 (S.D.N.Y. 2007) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). However, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

16

environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citing *Harris*, 510 U.S. at 21). "[T]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) (alteration in original) (internal quotation marks omitted). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

"Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374 (citation omitted). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (citation omitted); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks omitted) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity. . . .") (internal quotation marks omitted).

The Amended Complaint states "no other non-basis employees were subjected to similar harassment, and discrimination in the manner that the Plaintiff was." Am. Compl. ¶ 12. Furthermore, "[a]s a direct and proximate result of the conduct of the Defendant, as aforesaid, the Plaintiff, Marilyn Phillips, has been deprived of promotional positions and employment with the Defendant, State of Connecticut Department of Social Services and the Defendant has continued a course of harassment against the Plaintiff." *Id.* ¶ 14.

The Amended Complaint does not allege any threatening, humiliating, or offensive utterance, let alone a pattern of such behavior. Instead, the Amended Complaint relies upon the allegations of failure to promote, discipline, and denial of employment accommodations as the basis for its claim of a hostile work environment. *Id.* ¶ 5-11. At most, the Amended Complaint could be construed to allege that White coworkers were promoted instead of Phillips and that Phillips was denied accommodation and more severely disciplined for a breach of paperwork policy. However, these circumstances are not objectively "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal quotation marks omitted); *see also Zheng-Smith v. Nassau Health Care Corp.*, No. 20-3544, 2021 WL 4097316, at *1-3 (2d Cir. Sept. 9, 2021) (summary order) (internal quotation marks and citation omitted) (rejecting a hostile environment claim where "[t]he only alleged mistreatment with a nexus to [the plaintiff's] race or national origin" was that her supervisor "ridiculed and mocked her accent"; this conduct was not "sufficiently severe or pervasive to amount to a hostile work environment"); *Littlejohn*, 795 F.3d at 321 (concluding that complaint failed to state a claim for a hostile work environment where complaint alleged a supervisor "was impatient and used

18

harsh tones," required the plaintiff to conduct menial tasks, and "wrongfully reprimanded" the plaintiff).

Therefore, the Amended Complaint fails to state a claim for a hostile work environment.

### D.    Leave to Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Golla v. Neovasc, Inc.*, No. 22-361-CV, 2023 WL 2469770, at *3 (2d Cir. Mar. 13, 2023) (summary order) (internal quotation marks and citation omitted) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). Under the permissive standard for amendments set forth in Rule 15(a)(2), a court may deny leave to amend only upon a showing of "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *accord Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). I cannot say from the present record that it would be futile to allow Phillips to plead additional facts to attempt to state a claim for hostile work environment and disparate treatment claims.

Accordingly, I grant DSS's motion to dismiss Phillips' claims of a hostile work environment and disparate treatment without prejudice and with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, DSS' Motion to Dismiss the First Amended Complaint is granted in part and denied in part. I dismiss Phillips' claims of a hostile work environment and disparate treatment without prejudice and with leave to amend. If Phillips wishes to replead these claims with additional facts, she shall file a Second Amended Complaint on or before

19

August 5, 2026. Any motion to amend filed after this date will be subject to the good cause standard of Fed. R. Civ. P. 16(b)(4).

I conclude that Phillips has alleged a valid claim for failure to promote. The stay of discovery shall remain in place while Phillips considers whether to file a Second Amended Complaint. If Phillips does not file a Second Amended Complaint, then DSS shall file an answer to the Amended Complaint by August 12, 2026. If Phillips does not file a Second Amended Complaint, the parties are directed to meet and confer to prepare a Local Rule 26(f) report, which shall be filed on or before August 26, 2026, and indicate whether the parties seek referral to a United States Magistrate Judge for the purpose of conducting a settlement conference. The Court will thereafter set a schedule for discovery in this case.

**SO ORDERED.**

New Haven, Connecticut
July 15, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

20